UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

TYRONNE WELLS (#397072)

VERSUS                                          CIVIL ACTION

CINDY VANNOY                                    NUMBER 10-821-JJB-SCR

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Baton Rouge, Louisiana, June 20, 2011.

_signature: Stephen C. Riedlinger_

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

TYRONNE WELLS (#397072)

VERSUS                                          CIVIL ACTION

CINDY VANNOY                                    NUMBER 10-821-JJB-SCR

<u>MAGISTRATE JUDGE'S REPORT</u>

Before the court is the defendant's Motion to Dismiss Original Complaint. Record document number 21. The motion is opposed.[1]

**Background**

Pro se plaintiff, an inmate confined at Louisiana State Penitentiary, Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Lt. Cindy Vannoy. Plaintiff alleged that a book he purchased from a mail order company was improperly rejected by Vannoy. Plaintiff further alleged that Vannoy retaliated against him for filing an administrative grievance complaining that she improperly withheld seven other books.

Defendant moved to dismiss the complaint pursuant to Rules 12(b)(1) and (6), Fed.R.Civ.P., for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.

---

[1] Record document number 22.

**Applicable Law and Analysis**

Subsection (c)(1) of 42 U.S.C. § 1997e provides the following:

> (c) Dismissal.--(1) The court shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. § 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility if the court is satisfied that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 2200 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007). The Supreme Court recently expounded upon the *Twombly* standard, explaining that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. It follows that "where the well-pleaded facts do not permit the court to infer

more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n] — 'that the pleader is entitled to relief.'" *Id*. at 1950 (quoting Fed.R.Civ.P. 8(a)(2)).

"A document filed *pro se* is to be liberally construed ... and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94, 127 S.Ct. at 2200 (citations omitted). But even a pro se complainant must plead "factual matter" that permits the court to infer "more than the mere possibility of misconduct." *Iqbal*, 129 S.Ct. at 1950. The court need not accept "a legal conclusion couched as a factual allegation," or "naked assertions [of unlawful misconduct] devoid of further factual enhancement." *Id.* at 1949-50 (internal quotation marks omitted).

**Retaliation claim**

Defendant argued that the plaintiff failed to exhaust available administrative remedies regarding his retaliation claim before filing suit.

Section 1997e of Title 42 of the United States Code provides in pertinent part as follows:

> (a) Applicability of Administrative Remedies.--No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Under 42 U.S.C. § 1997e(a), a prisoner must exhaust available administrative remedies before filing a § 1983 suit and is

3

precluded from filing suit while the administrative complaint is pending. *Clifford v. Gibbs*, 298 F.3d 328, 332 (5th Cir. 2002); *Underwood v. Wilson*, 151 F.3d 292, 296 (5th Cir. 1998), *abrogated in part* by *Jones v. Bock*, 549 U.S. 199, 127 S.Ct. 910 (2007) (abrogating the holding that a district court may dismiss a civil complaint *sua sponte* for failure to exhaust); *Wendell v. Asher*, 162 F.3d 887, 891 (5th Cir. 1998); *Harris v. Hegmann*, 198 F.3d 153, 157 (5th Cir. 1999). A prisoner must exhaust his administrative remedies by complying with applicable prison grievance procedures before filing a suit related to prison conditions. *Johnson v. Johnson*, 385 F.3d 503, 514 (5th Cir. 2004). Not only must the prisoner exhaust all available remedies, but such exhaustion must be proper, including compliance with an agency's deadlines and other critical procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 90, 126 S.Ct. 2378, 2386 (2006). Because § 1997e(a) expressly requires exhaustion, prisoners may not deliberately bypass the administrative process by flouting an agency's procedural rules. *Id.*, 126 S.Ct. at 2389-90. The § 1997e(a) exhaustion requirement is mandatory, irrespective of the forms of relief sought and offered through administrative avenues. *Days v. Johnson*, 332 F.3d 863, 866 (5th Cir. 2003). A court can dismiss a case prior to service on defendants for failure to state a claim, predicated on failure to exhaust, if the complaint itself makes clear that the prisoner failed to exhaust. *Carbe v. Lappin*, 492 F.3d 325, 328

4

(5th Cir. 2007).

Defendant argued that in a letter attached to the complaint, the plaintiff acknowledged that he filed an Administrative Remedy Procedure (hereinafter ARP) regarding his retaliation claim which was still pending.

A review of the attachment to the plaintiff's complaint showed that the plaintiff acknowledged that the ARP was "in progress" at the time the suit was filed.[2]  Plaintiff acknowledged in the complaint that he filed an emergency administrative grievance regarding Vannoy's alleged retaliation on November 19, 2010.[3]

In accordance with the Adult Administrative Remedy Procedures, an inmate commences the process by writing a letter to the warden in which he briefly sets out the basis for his claim and the relief sought.  La. Admin. Code tit. 22, pt. I § 325(G)(1)(a).  The request shall be screened by the ARP screening officer and a notice will be sent to the inmate advising that his request is being processed or is rejected.  *Id*.  The warden shall respond to the inmate within 40 days from the date the request is received at the first step.  *Id*.  An inmate who is dissatisfied with the first step response may appeal to the secretary of the Department of Public Safety and Corrections by so indicating in the appropriate space on

---

[2] Record document number 1, Complaint, attached December 6, 2010 letter to Clerks Office.

[3] *Id.* numbered p. 7.

the response form and forwarding it to the ARP screening officer within 5 days of receipt of the decision. *Id*. at § 325(G)(2)(a). A final decision will be made by the secretary and the inmate will be notified within 45 days of receipt. *Id*.

Even assuming that the plaintiff's ARP was accepted into the procedure on that same date, there was not sufficient time to exhaust available administrative remedies through the two step process before filing suit on December 8, 2010.

It is apparent on the face of the complaint that the plaintiff failed to exhaust available administrative remedies regarding his retaliation claim raised in the complaint prior to filing suit, as required by 42 U.S.C. § 1997e(a).

**Rejection of *Pimpology***

Plaintiff alleged that he purchased a book entitled *Pimpology: The 48 Laws of the Game* (hereafter *Pimpology*) from a mail order company. Plaintiff alleged that when the book arrived in the mail room, the defendant improperly rejected the book in contravention of Department Regulation C-02-009 and LSP Directive 16.002. Plaintiff argued that the defendant rejected the book based on the race, age and sex of the author of the book rather than because the content of the book failed to comply with the department regulation and directive. Plaintiff alleged that there are similar books in the prison library.

Plaintiff alleged that after he received notice that *Pimpology*

6

was rejected, he sent a notice of appeal letter to the mail room and filed an ARP. Plaintiff alleged that ARP LSP-2010-0841 was accepted on April 5, 2010. Plaintiff alleged that on September 22, 2010, he received the First Step Response which was prepared by Vannoy and approved by Deputy Wardens Richard Peabody and Darrel Vannoy. Plaintiff alleged that he received the Second Step Response on October 7, 2010. Plaintiff alleged that the ARP was denied relying on Department Regulation No. C-02-009.

The First Step Response Form issued for ARP LSP-2010-0841 includes a lengthy description of the purpose of Departmental Regulation C-02-009. It has only one sentence stating the reason for rejecting *Pimpology*: "The book in question contains information that could lead to the manipulation of staff, therefore compromising the internal/external security of the institution."[4]

As the defendant recognizes, the plaintiff is not challenging the constitutionality of Department Regulation No. C-02-009. He is challenging the application of the regulation to *Pimpology*. In her opposition memorandum the defendant gives no more explanation for her justification for rejecting *Pimpology* than she did in the First Step Response Form. Defendant did not cite any specific information in the book which "could lead to manipulation of staff," nor did she present a cogent argument explaining how the (unidentified) information could have this effect. Rather, the

---

[4] Record document number 19-1, Exhibit A, p. 7 of 14.

defendant argued the "plaintiff failed to allege any facts supporting why such a book is not *per se* unreasonable within a prison setting for any one of the reasons listed above."[5] Consequently, the court can only speculate about what is in *Pimpology* that could "could lead to manipulation of staff."

Moreover, the plaintiff does not have the burden of showing that "such a book is not *per se* unreasonable within a prison." To the contrary, the burden is on the defendants.

In determining whether a prison regulation impinges on an inmate's constitutional rights, the court must consider four factors which were set out in *Turner v. Safley*, 482 U.S.78, 107 S.Ct. 2254 (1987). These are: (1) whether the regulation has a logical connection to the legitimate government interests invoked to satisfy it; (2) whether there are alternative means of exercising the rights that remain open to the inmate; (3) the

---

[5] After asserting that courts have upheld confiscation of books containing sexually explicit materials, the defendant stated that "*Pimpology* is defined as 'slang methods to coerce and control prostitutes.'" Record document number 21-1, p. 13. First, if this is an argument that the book could be confiscated just because of its name, the argument fails because there is nothing sexually explicit about the word "pimpology." Second, the defendant cited an internet source, www.answers.com, for her definition of "pimpology." But she did not ask the court to take judicial notice of the website's definition of "pimpology," nor has she shown that information from that website is generally recognized as accurate and reliable. See Rule 201, Fed.R.Evid. Third, even if the court took judicial notice of the defendant's proffered definition, it would have no application in this case since the reason the defendant rejected the book was the potential for manipulation of prison staff, not control of prostitutes.

8

impact that accommodation of the asserted constitutional rights will have on other inmates, guards and prison resources; and, (4) the presence or absence of ready alternatives that fully accommodate the prisoner's rights at a de minimis cost to valid penological interests.  *See Thornburgh v. Abbott*, 490 U.S. 401, 419, 109 S.Ct. 1874, 1885 (1989)(affirming remand to district court for an examination of prison restrictions on inmates' receipt of publications as applied to specific publications); *Neal v. Lucas*, 75 Fed.Appx. 960 (5th Cir. 2003)(remand to district court to consider whether the prison regulation as applied to the particular publications sought violated the plaintiff's constitutional rights).

Absent an explanation for her decision to reject *Pimpology* based on the actual contents of the book, the plaintiff's allegation that the defendant improperly rejected the *Pimpology* in violation of his constitutional rights is sufficient to state a claim upon which relief can granted.

**Eleventh Amendment immunity**

Defendant also argued that she is entitled to Eleventh Amendment immunity insofar as the plaintiff sued her in her official capacity.

The distinction between personal and official capacity suits was clarified by the U.S. Supreme Court in *Hafer v. Melo, et al*, 502 U.S. 21, 112 S.Ct. 358 (1991).  A suit against a state official

9

in his official capacity is treated as a suit against the state. *Id.*, 502 U.S. at 25, 112 S.Ct. at 361, *citing Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105 (1985). Because the real party in interest in an official-capacity suit is the governmental entity and not the named individual, the "entity's 'policy or custom' must have played a part in the violation of federal law." *Graham, supra*, at 166, 105 S.Ct. at 3105.

Personal-capacity suits, on the other hand, seek to impose individual liability upon a government officer for actions taken under of color of state law. A showing that the official, acting under color of state law, caused the deprivation of a federal right is enough to establish personal liability in a section 1983 action. *Hafer*, 502 U.S. at 25, 112 S.Ct. at 362.

*Will v. Michigan Department of State Police*, 491 U.S. 58, 109 S.Ct. 2304 (1989), makes it clear that the distinction between official-capacity suits and personal-capacity suits is more than a "mere pleading device." Officers sued in their personal capacity come to court as individuals. A state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the state. *Will*, 491 U.S. at 71, 109 S.Ct. at 2311, n. 10, *quoting Kentucky v. Graham*, 473 U.S. at 167, 105 S.Ct. at 3106, n. 14.

Thus, the plaintiff may recover money damages against the

defendant insofar as the defendant was sued in her individual capacity for actions taken by her under color of state law which caused the deprivation of constitutional rights. Additionally, because the plaintiff sought prospective injunctive relief his claim against the defendant in her official capacity is also actionable under § 1983.

**Other withheld books**

Plaintiff alleged that on September 10, 2010, he ordered two additional books. Plaintiff alleged that the books were received at the prison. One book, entitled *Electronic Games for the Evil Genius*, was forwarded to the Regional Warden for review and determination of acceptability by Msgt. Knapps. Plaintiff alleged that he wrote Warden Cain letters regarding the status of the book under review.

Plaintiff alleged that on September 17, 2010, he ordered seven books. Plaintiff alleged that when he failed to receive the books in a reasonable amount of time, he contacted the company and was advised that the books were shipped on September 27, 2010. Plaintiff alleged that he discussed the matter with an assistant warden who advised him to contact the mail room. Plaintiff alleged that he contacted mail room personnel but received no response to his inquiry. Plaintiff alleged that he subsequently received a memorandum from Assistant Warden Chad Menzina advising that the seven hard back books had been received. Plaintiff was instructed

11

to submit an authorization to remove the hard back binding from the books by November 4, 2010. Plaintiff alleged that he hand-delivered the authorization to Menzina on November 4, 2010 but has not received the seven books. Plaintiff alleged that he wrote a letter to Warden Cain regarding not receiving the seven books.

Plaintiff alleged that he ordered four additional books on November 11, 2010 but has not received the books.

Defendant argued that the plaintiff failed to allege any facts against her regarding the alleged withheld books.

To be liable under § 1983, a person must either be personally involved in the acts causing the alleged deprivation of constitutional rights, or there must be a causal connection between the act of that person and the constitutional violation sought to be redressed. *Lozano v. Smith*, 718 F.2d 756 (5th Cir. 1983). Plaintiff's allegation that Vannoy is responsible for the actions of her subordinates is insufficient to state a claim under § 1983. *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018 (1978).

Plaintiff failed to allege any facts that state a claim upon which relief can be granted against Vannoy regarding the allegedly withheld books.

### Supplemental Jurisdiction

Plaintiff sought to invoke the supplemental jurisdiction of this court. District courts may decline to exercise supplemental

jurisdiction over a claim if the claim raises a novel or complex issue of State law; the claim substantially predominates over the claims over which the district court has original jurisdiction; if the district court has dismissed all claims over which it had original jurisdiction; or for other compelling reasons.  28 U.S.C. § 1367.

## RECOMMENDATION

It is the recommendation of the magistrate judge that the defendant's motion to dismiss be granted in part, dismissing all of the plaintiff's claims except the plaintiff's claim that Vannoy improperly rejected the book *Pimpology* in violation of his constitutional rights.  It is further recommended that the court fix a reasonable time for the plaintiff to file an amended complaint alleging facts sufficient to state a claim against the defendant as to all claims other than his claim that the book *Pimpology* was improperly rejected.  It is further recommended that the court decline to exercise supplemental jurisdiction over any state law claim.

Baton Rouge, Louisiana, June 20, 2011.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE