UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


TYRONNE WELLS (#397072)

VERSUS                                         CIVIL ACTION

CINDY VANNOY                                   NUMBER 10-821-JJB-SCR


**<u>NOTICE</u>**

    Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.
    In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

    ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

    Baton Rouge, Louisiana, July 31, 2012.

                              STEPHEN C. RIEDLINGER
                              UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

TYRONNE WELLS (#397072)

VERSUS                                                CIVIL ACTION

CINDY VANNOY                                          NUMBER 10-821-JJB-SCR

**MAGISTRATE JUDGE'S REPORT**

Before the court are the parties' cross motions for summary judgment. Record document numbers 60 and 81. Plaintiff opposed the defendant's motion.[1] Defendant filed a reply to the plaintiff's opposition[2] to which the plaintiff filed a surreply.[3]

For the reasons which follow, the plaintiff's motion should be denied and the defendant's motion should be granted.

**I. Background**

Pro se plaintiff, an inmate confined at Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Lt. Cindy Vannoy. Plaintiff alleged that a book he purchased from a mail order company, *Pimpology: The 48 Laws of the Game* (hereafter *Pimpology*) was improperly rejected

---

[1] Record document numbers 69, 95 and 96.

[2] Record document number 74.

[3] Record document number 83.

by Vannoy. Plaintiff was granted leave[4] to amend his complaint to allege that Vannoy violated his rights to freedom of expression under the First Amendment when she rejected the book.[5] Plaintiff sought compensatory damages, declaratory judgment and injunctive relief.

Plaintiff moved for summary judgment[6] relying on a statement of undisputed facts, his affidavit, the notice of rejection of the book entitled *Pimpology* and Department Regulation No. C-02-009.

Defendant moved for summary judgment relying on a statement of undisputed facts, her affidavit and a copy of Department Regulation No. C-02-009.

Plaintiff alleged that he purchased *Pimpology* from a mail order company. Plaintiff alleged that when the book arrived in the mail room, the defendant improperly rejected the book in contravention of Department Regulation C-02-009 and LSP Directive 16.002. Plaintiff argued that the defendant rejected the book based on the race, age and sex of the author of the book rather than because the content of the book failed to comply with the

---

[4] Record document number 46.

[5] Plaintiff's claims that Vannoy improperly withheld seven other books and she retaliated against him for filing an administrative grievance were previously dismissed. Record document number 45. In addition, the court declined to exercise supplemental jurisdiction over any state law claim. *Id.*

[6] Record document number 81.

department regulation and penitentiary directive.  Plaintiff alleged that there are similar books in the prison library.

Plaintiff alleged that after he received notice that *Pimpology* was rejected, he sent a notice of appeal letter to the mail room and sought relief by filing an Administrative Remedy Procedure ("ARP") request.  Plaintiff alleged that ARP LSP-2010-0841 was accepted on April 5, 2010. Plaintiff alleged that on September 22, 2010, he received the First Step Response which was prepared by Vannoy and approved by Deputy Wardens Richard Peabody and Darrel Vannoy.  The First Step Response Form includes a lengthy description of the purpose of Departmental Regulation C-02-009.  It has only one sentence stating the reason for rejecting *Pimpology*: "The book in question contains information that could lead to the manipulation of staff, therefore compromising the internal/external security of the institution."[7]  Plaintiff alleged that he received the Second Step Response on October 7, 2010.  Plaintiff alleged that the ARP was denied relying on Department Regulation No. C-02-009.

Plaintiff does not challenge the constitutionality of Department Regulation No. C-02-009.  Rather, the core dispute is whether the defendant's decision to reject *Pimpology* violated the plaintiff's First Amendment rights.

---

[7] Record document number 19-1, Exhibit A, p. 7 of 14.

## II. Applicable Law and Analysis

**A. Summary Judgment Standard**

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure. Supporting affidavits must set forth facts which would be admissible in evidence. Opposing responses must set forth specific facts showing that there is a genuine issue for trial. Rule 56(c).

**B. No Physical Injury**

Defendant argued that the plaintiff's claims are subject to dismissal pursuant to 42 U.S.C. § 1997e(e) because the plaintiff failed to allege that he sustained a physical injury.

Subsection (e) of 42 U.S.C. § 1997e provides:

> (e) Limitation on recovery. No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

A review of the allegations showed that the plaintiff failed to allege that he sustained a physical injury as a result of the alleged rejection of the publication. Therefore, the plaintiff is prohibited from recovering compensatory damages pursuant to 42 U.S.C. § 1997e(e).

Although § 1997e(e) prohibits the plaintiff from recovering

compensatory damages, it does not bar his recovery of nominal and punitive damages for constitutional violations despite the lack of any physical injury. *Hutchins v. McDaniels*, 512 F.3d 193, 198 (5th Cir. 2007). Of course, to recover nominal or punitive damages, the plaintiff must prove a constitutional violation by the defendant.

### C. Legitimate Penological Objective Standard

In determining whether a prison regulation impinges on an inmate's constitutional rights, the court must consider four factors which were set out in *Turner v. Safley*, 482 U.S.78, 107 S.Ct. 2254 (1987). These are: (1) whether the regulation is "rationally related" to a legitimate penological goal; (2) whether alternative means of exercising First Amendment rights remain open to the inmate; (3) the impact that accommodating the asserted constitutional right will have on other inmates, guards and prison resources; and, (4) the presence or absence of ready alternatives that fully accommodate the prisoner's rights at a *de minimis* cost to valid penological interests. *Prison Legal News v. Brad Livingston*, 683 F.3d 201 (5th Cir. 2012); *see Thornburgh v. Abbott*, 490 U.S. 401, 414-18, 109 S.Ct. 1874, 1882-84 (1989)(affirming remand to district court for an examination of prison restrictions on inmates' receipt of publications as applied to specific publications); *Neal v. Lucas*, 75 Fed.Appx. 960 (5th Cir. 2003)(remand to district court to consider whether the prison regulation as applied to the particular publications sought

violated the plaintiff's constitutional rights). "[R]ationality is the controlling factor," *Mayfield v. Tex.Dep't of Criminal Justice*, 529 F.3d 599, 607 (5th Cir. 2008), and the remaining factors are best understood as indicators of rationality. *See Scott v. Miss. Dep't of Corr.*, 961 F.2d 77, 80-81 (5th Cir. 1992).

The Supreme Court has instructed that it is "important to inquire whether prison regulations restricting inmates' First Amendment rights operated in a neutral fashion, without regard to the content of the expression." *Thornburgh v. Abbott*, 490 U.S. at 415, 109 S.Ct. at 1882 (quoting *Turner v. Safley*, 482 U.S., at 90, 107 S.Ct., at 2262). This neutrality requirement means that "the regulation or practice in question must further an important or substantial governmental interest unrelated to the suppression of expression." *Id*. (quoting *Procunier v. Martinez*, 416 U.S. 396, 413, 94 S.Ct. 1800, 1811 (1974)). Prison regulations that "draw distinctions between publications solely on the basis of their potential implications for prison security" are facially neutral in the relevant sense. *Id.* at 415-16, 109 S.Ct. at 1882-83.

Plaintiff bears the burden of showing that the regulation, as applied, is not reasonably related to legitimate penological objectives, *see Overton v. Bazzetta*, 539 U.S. 126, 132, 123 S.Ct. 2162, 2168 (2003); *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 128, 97 S.Ct. 2532, 2539 (1977); *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 350, 107 S.Ct. 2400, 2405 (1987);

6

*Shaw v. Murphy*, 532 U.S. 223, 232, 121 S.Ct. 1475, 1481 (2001), or that it is an "exaggerated response" to those concerns. *Turner v. Safley*, 482 U.S. at 87, 107 S.Ct. at 2260.

Plaintiff must overcome the substantial deference granted prison administrators in determining the "appropriate means of furthering penological goals" because they "bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton v. Bazzetta*, 539 U.S. at 132, 123 S.Ct. at 2167.

**D. Department Regulation No. C-02-009**

The summary judgment evidence showed that receipt of publications is governed by Department Regulation No. C-02-009, implemented on January 5, 2007, by former Louisiana Department of Public Safety and Corrections Secretary Richard Stalder.[8] Books are defined as a publication in the regulation.[9] The regulation provides that publications may be read and inspected to discover contraband and unacceptable depictions and literature.[10] The regulation provides that printed material shall only be refused if

---

[8] Record document number 60-4, pp. 1-27.

[9] *Id*. at 2, § F. In addition to books, the regulation defines a publication to include booklets, pamphlets, single issue magazines, periodicals, newsletters, newspapers, magazine/newspaper clippings, articles printed from the internet, and other materials addressed to a specific inmate such as advertising brochures, flyers and catalogs.

[10] *Id*. at 10, § 9.A.

7

it interferes with legitimate penological objectives or if the refusal is necessary to prevent the commission of a crime or to protect the interests of crime victims.[11] The regulation provides that legitimate penological objectives include, but are not limited to, deterrence of crime, rehabilitation of inmates, maintenance of the internal and external security of an institution and maintenance of an environment free of sexual harassment.[12] The regulation provides that publications which raise security issues or contain sexually explicit material shall be refused.[13]

The regulation provides that publications which raise security issues include, but are not limited to, the following:

(a) Maps, road atlas, etc. that depict a geographic region that could reasonably be construed to be a threat to security;

(b) Writing that advocate, assist or are evidence of criminal activity or facility misconduct;

(c) Instructions regarding the ingredients or manufacturing of intoxicating beverages or drugs;

(d) Information regarding the introduction of, or instructions in the use, manufacture, storage, or replication of weapons, explosives, incendiaries, escape devices or other contraband;

(e) Instructs in the use of martial arts;

---

[11] *Id*. at 11, § 9.C.

[12] *Id*.

[13] *Id*., § 9.C.(1) and (2).

(f) Racially inflammatory material or material that could cause a threat to the inmate population, staff, and security of the facility;

(g) Writings which advocate violence or which create a danger within the context of a correctional facility.[14]

The regulation provides that a publication shall be categorized based on its acceptability as determined by Regional Wardens.[15] Publications can be added, deleted or moved from one category to another at the discretion of the Secretary at any time.[16]

Publications are screened for acceptability based on the following categories:

Category 1 - Presumption of non-acceptability;

Category 2 - Those that need to be reviewed on a case-by-case basis prior to allowing them to be delivered to the recipient and subject to review by the Regional Warden;

Category 3 - Presumption of acceptability.[17]

The current lists of publications in each category is attached

---

[14] *Id*. § 9.C.(1).

[15] *Id*. at 12, § 9.C.(3).

[16] *Id*.

[17] *Id*.

to the regulation.[18] The regulation provides that when an institution receives a Category 2 publication which has not already been ruled on by the Regional Wardens, the mail room will send the inmate a Notice of Pending Review of Publication Form[19] and forward the publication to the Regional Warden who will determine acceptability.[20]

The regulation provides that when a publication is refused, the inmate shall be notified on a Publications Notice of Rejection Form[21] within three working days of the refusal and the reason for the rejection.[22] Rejections are appealable through the Administrative Remedy Procedure.[23]

### E. Rejection of *Pimpology*

The summary judgment evidence showed that Vannoy is the LSP Mail/Package Department Supervisor responsible for the inspection of all outgoing and incoming mail and packages for inmates and offices at the state penitentiary.[24] The summary judgment evidence

---

[18] *Id.* at 19-24, Attachments E, F and G.

[19] *Id.* at 25, Attachment H.

[20] *Id.* at 12.

[21] *Id.* at 26, Attachment I.

[22] *Id.* at 13, § 9.C.(4).

[23] *Id.*

[24] Record document number 60-3, pp. 1-4, Affidavit Cindy
(continued...)

showed that Vannoy reviewed *Pimpology* in accordance with Department Regulation No. C-02-009 and found that the contents of the publication contained material that could lead to the manipulation of staff which could jeopardize the internal/external security of the institution.[25] The summary judgment evidence showed that Vannoy flagged the pages of the publication which depict objectionable content and sent a Notice of Rejection to the plaintiff.[26]

The record evidence showed that Vannoy has undergone training regarding recognizing attempts by offenders to control and manipulate staff, particularly female staff.[27]

### 1. Rational Connection

In assessing the decision to reject *Pimpology*, the question is whether there is a "valid, rational connection" between the decision made and a "legitimate governmental interest." *Turner v. Safley*, 482 U.S. at 89, 107 S.Ct. at 2262.

Plaintiff opposed the defendant's motion for summary judgment on several grounds. First, the plaintiff argued that because the regulation does not specifically identify the content of a publication which "contains information that could lead to the

---

[24](...continued)
Vannoy.

[25] *Id*. at 3.

[26] *Id*. at 4.

[27] Record document number 91 *Sealed*.

manipulation of staff" as a security issue for which a publication may be rejected, the book could not be rejected pursuant to the regulation.[28] Plaintiff's argument is without merit.

Although the regulation identifies several security issues for which a publication shall be rejected, application of the regulation is not limited to only those security issues enumerated therein.

Second, the plaintiff argued that Vannoy could not show that the content at issue in *Pimpology* could have an adverse effect on security. Plaintiff's argument is without merit.

Prison officials are not required to prove that the censored book would actually cause problems. Plaintiff bears the burden of showing that there is no reasonable relationship between the application of the regulation and legitimate penological objectives. *See Overton v. Bazzetta*, 539 U.S. at 132, 123 S.Ct. at 2168. Prison policies may be legitimately based on prison administrators' reasonable assessment of *potential* dangers. *Prison Legal News v. Brad Livingston*, 683 F.3d at 216.

Third, the plaintiff argued that because other books which contain essentially the same content can be found in the prison library, *Pimpology* could not be considered to pose a security concern. Plaintiff argued that the stated reason for rejecting the

---

[28] Record document number 69-1, Plaintiff's Opposition to Defense Motion for Summary Judgment.

publication was a pretext for censoring the book based on the race, age and sex of the author of the book.  Plaintiff's argument is not persuasive.

Comparison of *Pimpology*, the disapproved publication, to others which have been approved is not the appropriate inquiry. The court must look only at the "rationality" or "reasonableness" of the decision with respect to the particular publication at issue.  Plaintiff must do more to meet his burden than merely assert that the application of the regulation is unreasonable. Plaintiff has not produced evidence which contradicts the rationality of the exclusion of *Pimpology*.

Defendant's decision to reject the publication at issue bears a "rational connection" to the legitimate interests of preserving the internal and external security of the institution.

### 2. Alternative Means of Exercising Rights

The second *Turner* factor is whether there are alternative means of exercising First Amendment rights that remain open to the inmate.  *Turner v. Safley*, 482 U.S. at 90, 107 S.Ct. at 2262. "Where 'other avenues' remain available for the exercise of the asserted right, courts should be particularly conscious of the 'measure of judicial deference owed to corrections officials .... in gauging the validity of the regulation.'" *Id*.

The summary judgment evidence supports a finding that there are alternative means available to the plaintiff to exercise his

13

constitutional right. Plaintiff conceded that there are several books available from the prison library with essentially the same content as the disapproved publication.

### 3. Impact of Accommodation

The third *Turner* factor considers the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources. *Turner v. Safley*, 482 U.S. at 90, 107 S.Ct. at 2262. Where "the class of publications to be excluded is limited to those found potentially detrimental to order and security ... [and] [w]here ... the right in question 'can be exercised only at the cost of significantly less liberty and safety for everyone else, guards and other prisoners alike,' the courts should defer to the 'informed discretion of corrections officials.'" *Thornburgh*, 490 U.S. at 418, 109 S.Ct. at 1884 (quoting *Turner*, 482 U.S. at 90, 92, 107 S.Ct. at 2262) (internal citations omitted).

Because the regulation is reasonably connected to security, this factor is satisfied.

### 4. Ready Alternatives

The fourth *Turner* factor examines the presence or absence of ready alternatives that fully accommodate the prisoner's rights at a *de minimis* cost to valid penological interests. *Turner v. Safley*, 482 U.S. at 90-91, 107 S.Ct. at 2262. The Supreme Court has noted that "prison officials do not have to set up and then

14

shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." *Id*. Instead, "if an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard." *Id*. Plaintiff has presented no alternatives which meet the *Turner* requirements.

### III. Conclusion

Plaintiff has not presented sufficient evidence to defeat summary judgment on his First Amendment claims. Plaintiff failed to present summary judgment evidence sufficient to demonstrate that the defendant's decision to reject *Pimpology* bears no reasonable relation to valid penological objectives.

### **RECOMMENDATION**

It is the recommendation of the magistrate judge that the plaintiff's motion for summary judgment be denied, that the defendant's motion for summary judgment be granted, and this action be dismissed.

Baton Rouge, Louisiana, July 31, 2012.

_____
STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE